**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.                                                                              Civ. No. 14-481 MV/KK
                                                                               (Cr. No. 07-2251 MV)

EVELYNE JAMES,

      Defendant/Movant.

<u>**MAGISTRATE JUDGE'S**</u>
<u>**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**</u>

     THIS MATTER is before the Court on Defendant/Movant Evelyne James' ("Movant")

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody ("Motion"), which she filed *pro se* on May 22, 2014.  (Doc. 1.)  Plaintiff/Respondent

the United States of America ("the Government") responded in opposition to the Motion on

August 6, 2014.  (Doc. 6.)  The Court appointed counsel to represent Movant in this civil action

on May 18, 2015.  (Doc. 9.)  Thereafter, on October 15, 2015, Movant filed a supplemental brief

in support of her Motion.  (Doc. 20.)  The Government responded to the supplemental brief on

November 30, 2015, and Movant filed a reply on December 14, 2015.  (Docs. 25, 26.)  On June

16, 2016, United States District Judge Martha Vázquez referred this matter to the undersigned to

conduct any proceedings necessary to recommend an ultimate disposition.  (Doc. 28.)

     In November 2007, a federal grand jury charged Movant, a member of the Navajo

Nation, with the first-degree murder of A.J., a minor, in Indian country, in violation of 18 U.S.C.

§§ 1111 and 1153.  (CR Doc. 12.)[1]  On May 24, 2012, pursuant to a signed plea agreement,

Movant pled guilty to an information charging her with the voluntary manslaughter of A.J., and

---

[1] References to "CR Doc." are to the docket in Cr. No. 07-2251 MV (D.N.M.), the underlying criminal case.

Chief United States Magistrate Judge Karen Molzen accepted Movant's plea of guilty to the reduced charge.  (CR Docs. 59, 63; Doc. 6-2; Doc. 6-3 at 17.)  On April 23, 2013, Judge Vázquez accepted the plea agreement and sentenced Movant to 25 years' imprisonment in accordance with the parties' agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  (CR Doc. 94; CR. Doc. 101 at 48.)  The Court entered a judgment of conviction against Movant on May 20, 2013.  (CR Doc. 95.)

Movant now seeks to have her conviction and sentence set aside, arguing that:  (a) her sentence was illegal and her guilty plea was unknowing and involuntary; (b) her trial counsel failed to represent her at a hearing on her *pro se* motion to withdraw her plea and to substitute counsel, in violation of her Sixth Amendment right to counsel; (c) the Court erred in denying her *pro se* motion to withdraw her plea and to substitute counsel; and, (d) her trial counsel provided her with ineffective assistance by failing to appeal that denial.  (Doc. 20 at 2, 6, 8-9; Doc. 26 at 3-12.)  The Government responds that Movant's sentence was legal and her plea was knowing and voluntary; that trial counsel represented her at all phases of the criminal proceedings; that the Court properly denied her *pro se* motion to withdraw her plea and to substitute counsel; and, that she has failed to show prejudice from her trial counsel's failure to appeal that denial.  (Doc. 25 at 7-14.)

The undersigned has meticulously reviewed all of the pleadings and attachments in this civil proceeding and the underlying criminal case, Cr. No. 07-2251 MV.  The undersigned has also examined the transcripts of Movant's plea hearing, the hearing on her motion to withdraw her plea and to substitute counsel, and her sentence hearing.  (CR Docs. 101, 110; Doc. 6-3.)  As to all but one of Movant's claims, the Court proposes to find that the Motion, exhibits, and record conclusively establish that Movant is not entitled to relief, and that an evidentiary hearing

is unnecessary.  28 U.S.C. § 2255(b); *United States v. Flood*, 713 F.3d 1281, 1291 (10th Cir. 2013); *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000).  Having carefully considered the parties' submissions, the civil and criminal record, and the relevant law, the undersigned recommends that these claims be DISMISSED with prejudice.  However, as to Movant's claim that her trial counsel provided her with ineffective assistance by failing to appeal the Court's denial of her motion to withdraw her plea and to substitute counsel, the undersigned will reserve recommending a disposition pending a review of Movant's answers to the interrogatories that the undersigned will propound by separate order, and of the Government's response, if any, thereto.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 11, 2007, the Government filed a criminal complaint charging Movant, a member of the Navajo Nation, with the first-degree murder of A.J., a four-year-old child, in Indian country.  (CR Doc. 1.)  The Court appointed Federal Public Defender Benjamin A. Gonzales to represent Movant on October 12, 2007, and on October 15, 2007 ordered Movant to be detained pending trial.  (CR Docs. 3, 7.)  On November 6, 2007, a federal grand jury returned an indictment charging Movant with A.J.'s first-degree murder in violation of 18 U.S.C. §§ 1111(a), (b), (c)(1), (c)(2), and (c)(3) and 1153.[2]  (CR Doc. 12.)  The Court ordered a competency evaluation on October 20, 2009, and on June 21, 2011, after a hearing on June 14, 2011, found that Movant was competent to stand trial.  (CR Docs. 42, 51; CR Doc. 52 at 1.)

On May 24, 2012, the Government and Movant entered into a plea agreement, in which Movant "agree[d] to plead guilty to an Information charging a violation of 18 U.S.C. §§ 1112(b),

---

[2] A superseding indictment returned on October 8, 2008, modified the charge by removing the allegations that Movant violated 18 U.S.C. § 1111(b), (c)(1), and (c)(2), retaining the allegations that she violated 18 U.S.C. §§ 1111(a) and (c)(3) and 1153, and adding the allegation that she violated 18 U.S.C. § 1111(c)(4).  (*Compare* CR Doc. 12 *with* CR Doc. 30.)

1153, and 3559(f)(3), that being Voluntary Manslaughter."[3]  (CR Doc. 59; Doc. 6-2 at 2-3.)  In

the agreement, Movant admitted the Government could prove beyond a reasonable doubt that:

> a.    On or about October 4, 2007, [i]n Indian Country, in McKinley County, in the District of New Mexico, the defendant, EVELYNE JAMES, an Indian, unlawfully killed John Doe, a four-year-old child, upon a sudden quarrel or heat of passion by assault, by striking, beating, and wounding, and did so without due caution and circumspection, and while acting with wanton and reckless disregard for human life, and her acts produced the death of John Doe, in violation of Title 18, United States Code, Sections 1153, 1112(b), and 3559(f)(3).
>
> b.    EVELYNE JAMES is a registered member of the Navajo Nation, and the child, John Doe, had not attained the age of 18, per 18 U.S.C. 3559(f)(3).
>
> c.    . . . [T]he Defendant . . . admits that there is a factual basis for each element of the crime to which the Defendant will plead guilty.  The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence.

(Doc. 6-2 at 5.)  The Government agreed not to "bring any additional charges against the

Defendant arising out of . . . these events occurring on or about October 4, 2007."  (*Id.* at 6.)

In the plea agreement, Movant confirmed her understanding that "the imprisonment range

for Voluntary Manslaughter is for a term of not less than 10 years to life."  (*Id.* at 2.)  Further,

pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Government and Movant

stipulated that the appropriate disposition of the case was a term of imprisonment of 25 to 27

years, a term of supervised release, a special penalty assessment, and mandatory restitution.  (*Id.*

at 3.)  Movant "recognize[d] that this plea agreement already has conferred a benefit upon her

and that no downward departure or variance from the sentence agreed upon pursuant to Federal

Rule of Civil Procedure 11(c)(1)(C) is appropriate."  (*Id.*)  The parties acknowledged that the

Court could

---

[3] Pursuant to the plea agreement, the Government subsequently dismissed the superseding indictment charging Movant with first-degree murder.  (Doc. 6-2 at 6; CR Docs. 106-07.)

accept or reject this plea agreement, or may defer its decision as to acceptance or
rejection until there has been an opportunity to consider the presentence report.
Pursuant to Federal Rule of Criminal Procedure 11(c)(5), if the Court rejects this
plea agreement, the Defendant shall have the right to withdraw her guilty plea.

(*Id.* at 4.)

The plea agreement also contained a waiver of appellate rights, which stated:

the Defendant knowingly waives the right to appeal her conviction and any
sentence imposed in this case, except to the extent, if any, that the Court may
impose a sentence that differs from that agreed to by the parties under Federal
Rule of Criminal Procedure 11(c)(1)(C). Additionally, . . . the Defendant
knowingly waives the right to collaterally attack any sentence imposed in this
case except on the grounds of ineffective assistance of counsel.

(*Id.* at 6-7.)

In Movant's plea agreement, there are a number of representations about the knowing and

voluntary nature of the plea. Thus, Movant represented

that this plea of guilty is freely and voluntarily made and is not the result of force,
threats, or promises (other than the promises set forth in this agreement). . . . The
Defendant represents that the Defendant is pleading guilty because the Defendant
is in fact guilty and for no other reason.

(*Id.* at 7.) Movant also represented that she had "thoroughly reviewed all aspects of this case

with [her] attorney and is fully satisfied with that attorney's legal representation." (*Id.* at 1.) In

signing the agreement, Movant affirmed that

[t]his Agreement has been read to me in the language I understand best, and I
have carefully discussed every part of it with my attorney. I understand the terms
of this Agreement, and I voluntarily agree to those terms. My attorney has
advised me of my rights, of possible defenses, of the sentencing factors set forth
in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of
the consequences of entering into this Agreement. No promises or inducements
have been given to me other than those contained in this agreement. No one has
threatened or forced me in any way to enter into this Agreement. Finally, I am
satisfied with the representation of my attorney in this matter.

(*Id.* at 8.) Movant's attorney also signed the agreement, representing that he had

carefully discussed every part of this Agreement with my client.  Further, I have fully advised my client of her rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this Agreement.  To my knowledge, my client's decision to enter into this Agreement is an informed and voluntary one.

(*Id.*)

Judge Molzen held a plea hearing on May 24, 2012, at which she engaged in a thorough plea colloquy with Movant, who testified under oath.  (Doc. 6-3 at 7.)  At the outset, Judge Molzen observed that

[i]t's going to be very important that you understand everything that's happening. So if you do have questions, when I bring you up to the lectern, please ask me to explain more fully or ask for more time to talk to your lawyer.

(*Id.* at 2.)  Judge Molzen also asked Movant specific questions to ensure that she was capable of understanding, and did in fact understand, the proceedings.  Thus, for example:

THE COURT:  Are you in pain today?

THE DEFENDANT:  Not really, no.

THE COURT:  Okay.  I just want to make sure that nothing is interfering with your ability to understand what's happening.  How about those medications that you're on?  Do any of them interfere with your ability to understand what's happening?

THE DEFENDANT:  No, your Honor.

THE COURT:  Okay.  Are you able to understand everything today?

THE DEFENDANT:  Yes, your Honor.

(*Id.* at 9-10.)  Movant confirmed that she had had sufficient time to talk to her counsel "about the charge and any possible defense[s]," that her counsel had answered all of her questions, and that she was satisfied with his advice and representation.  (*Id.* at 15-16.)  Movant further confirmed that no one was pressuring or forcing her to plead guilty.  (*Id.*)  She acknowledged her signature

on the plea agreement and that she had discussed "all of its terms" with counsel before she signed it.  (*Id.* at 11-12.)

Movant testified that she understood the Government alleged that she "committed the crime of voluntary manslaughter," and that she intended "to plead guilty to a charge of voluntary manslaughter." (*Id.* at 7-8, 10.)  Judge Molzen confirmed Movant's understanding of the elements the Government would have to prove at trial to convict her of that offense.  (*Id.*)  The prosecutor read the parties' factual stipulations in the plea agreement into the record, towit, that the Government could prove beyond a reasonable doubt that Movant

> unlawfully killed John Doe . . . , a four-year-old child[, upon a sudden quarrel or] heat of passion by assault, by striking, beating, and wounding, and did so without due caution [and circumspection,] while acting – and the Defendant, while acting with a wanton and reckless disregard for human life, that her actions [produced] the death of John Doe.[4]

(*Id.* at 16.)  Movant affirmed that these facts were true.  (*Id.* at 17.)

At Judge Molzen's direction, the prosecutor reviewed the statutory minimum and maximum penalties for the offense to which Movant was pleading guilty, specifically,

> [not less than] ten years' imprisonment, up to life imprisonment, a fine of $250,000, supervised release of at least three years, a special [penalty assessment] of $100, and restitution, if any, as ordered by the Court.[5]

(*Id.* at 10-11.)  Movant testified that she understood these minimum and maximum penalties. (*Id.*)  Judge Molzen also noted the terms of the Rule 11(c)(1)(C) agreement between the parties, stating:

---

[4] The transcript of the plea hearing indicates that the bracketed terms are "indiscernible."  (Doc. 6-3 at 16.) However, the Court has reviewed the relevant portion of its audio recording of Movant's plea hearing, and was able to hear and discern the bracketed terms, which are as stated herein.  (Cimarron2_20120524-1132_01cd39a0e8be0410.wma at 12:00-13:12.)

[5] Again, the transcript of the plea hearing indicates that the bracketed terms are "indiscernible."  (Doc. 6-3 at 10-11.) However, the Court has reviewed the relevant portion of its audio recording of Movant's plea hearing, and was able to hear and discern the bracketed terms, which are as stated herein.  (Cimarron2_20120524-1132_01cd39a0e8be0410.wma at 5:20-5:42.)

[t]his agreement calls for . . . a certain sentence that you've agreed to with the Government.  In exchange for your plea of guilty to this information, it calls for your imprisonment for somewhere between 25 and 27 years . . . .   Do you understand that that is your agreement with the Government?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you understand that if Judge [Vázquez] agrees to sentence you within that 25 to 27-year range of incarceration, that you are giving up your right to appeal that sentence?

THE DEFENDANT:  Yes, your Honor.

(*Id.* at 12.)  Judge Molzen further noted, and Movant confirmed she understood, that her "only remedy," if Judge Vázquez were to reject the plea agreement, would be to withdraw her guilty plea.[6]  (*Id.* at 11, 17.)

Judge Molzen thoroughly advised Movant of her right to a jury trial, and the rights associated with such a trial, including the right to be presumed innocent, the right to have the assistance of an attorney, the right to compel witnesses to testify, and the right to remain silent without that silence being used against her, or to testify in her own defense if she chose; and, Movant confirmed that she understood these rights.  (*Id.* at 14-15.)  Movant further confirmed her understanding that, by pleading guilty, she was giving up that trial and those rights.  (*Id.* at 15.)  Judge Molzen described relevant legal concepts clearly and in layperson's terms where possible.  (*See, e.g.*, *id.* at 12 (describing Rule 11(c)(1)(C) agreement), 14-15 (describing rights attendant to jury trial).)  Also, Judge Molzen was solicitous of Movant's emotional state, responding to Movant's testimony that she suffered from anxiety with, "Don't be anxious here, all right," and at another point during the colloquy stating, "Now, I want you to breathe for me

---

[6] Although Judge Molzen twice explained to Movant, correctly, that she could withdraw her plea if Judge Vázquez rejected the parties' Rule 11(c)(1)(C) plea agreement and refused to sentence Movant to 25 to 27 years' imprisonment, (Doc. 6-3 at 11, 17), on one occasion she misspoke and stated that Movant could withdraw her guilty plea "if Judge [Vázquez] agrees to sentence you to between 25 and 27 years of incarceration."  (*Id.* at 13.)  Notably, Movant's plea agreement correctly states that, "[p]ursuant to Federal Rule of Criminal Procedure 11(c)(5), if the Court rejects this plea agreement, the Defendant shall have the right to withdraw her guilty plea."  (Doc. 6-2 at 4.)

because I don't want to see you faint.  All right?  Okay.  And if you need to sit down, you let me know."  (*Id.* at 9, 12.)

At the conclusion of the colloquy, Judge Molzen asked Movant how she pled to the charge against her, and Movant responded, "Guilty, your Honor."  (*Id.* at 17.)  Judge Molzen then found

> that the Defendant, Evelyne James, is fully competent and capable of entering an informed plea; she's aware of the nature of the charge and the consequences of the plea; and this plea of guilty is knowing, it's voluntary, and it is supported by an independent basis in fact that contains all of the elements of the offense.  I accept your plea and now adjudge you guilty of this crime.  I'll defer acceptance of the plea agreement.  That will be up to Judge [Vázquez].  If she rejects it, you will be able to permit – or to withdraw your plea of guilty.

(*Id.* at 17.)  After Judge Molzen made these findings, Movant confirmed that she understood what had happened at the hearing, and that she had pled guilty voluntarily.  (*Id.* at 18.)  At no time during the hearing did Movant indicate that she did not understand, had a question for the Court, or needed time to talk to her lawyer.  (*See generally id.*)

Nevertheless, on June 28, 2012, the Court received a letter from Movant in which she asked to be allowed to withdraw her guilty plea and for a new attorney.[7]  (CR Doc. 64.)  On September 11, 2012, Judge Vázquez held a hearing to address Movant's letter, which was construed as a *pro se* motion to withdraw her plea and to substitute counsel.  (CR Docs. 72, 110.)  Assistant United States Attorney Presiliano Torrez, Movant's counsel Mr. Gonzales, and Movant appeared at the hearing.  (CR Doc. 110 at 3.)  First, Mr. Torrez observed that Movant was originally charged with first-degree murder, which, upon conviction, would have resulted in a mandatory term of life imprisonment.  (*Id.* at 3-4.)  Mr. Torrez initially stated that this charge was reduced to second-degree murder, but promptly corrected himself, noting that although

---

[7] The letter was dated June 18, 2012.  (CR Doc. 64 at 1.)

counsel "originally discussed that," Movant ultimately pled guilty to voluntary manslaughter.[8] (*Id.* at 4.)  Mr. Torrez then stated, erroneously, that due to the enhancement 18 U.S.C. § 3559(f) provides for certain violent crimes against children, the statutory maximum term of imprisonment for voluntary manslaughter was doubled from 15 years to 30 years.[9]  (*Id.* at 4-5.) Finally, Mr. Torrez noted that the parties had agreed to a term of imprisonment of 25 to 27 years pursuant to Rule 11(c)(1)(C).  (*Id.* at 5.)  The Court then excused Mr. Torrez from the courtroom. (*Id.*)

After Mr. Torrez departed, the Court considered each of the reasons Movant gave in her letter for seeking to withdraw her plea and obtain new counsel.  First, the Court addressed Movant's contention that Mr. Gonzales had not provided her with "all the documents and records regarding [her] case including [her] own psychiatric evaluation."  (*See* CR Doc. 64 at 1.)  In response to the Court's inquiry, Mr. Gonzales indicated that he had hand-delivered 1,293 pages of discovery to Movant, that he had made a "strategic decision" not to ask the psychiatric experts he had consulted to write a report, and that the only records he had not provided to Movant were medical records he had obtained from the Gallup Indian Medical Health Center.  (CR Doc. 110 at 6-7.)  The Court observed that the latter records concerned Movant's health rather than her criminal case; nevertheless, Mr. Gonzales agreed to provide them to Movant.  (*Id.* at 7.)

Next, the Court addressed Movant's contention that Mr. Gonzales had "confused" her "by saying he changed [her] charge from involuntary manslaughter to voluntary manslaughter which . . . carries a longer term of imprisonment."  (CR Doc. 64 at 1.)  In response to the Court's

---

[8] Movant contends that the Court corrected Mr. Torrez on this point, but the hearing transcript indicates that he corrected himself.  (Doc. 20 at 5; CR Doc. 110 at 4.)

[9] In fact, because voluntary manslaughter is a "crime of violence" resulting in "serious bodily injury," the enhanced sentence for voluntary manslaughter of a child is "imprison[ment] for life or for any term of years not less than 10." 18 U.S.C. § 3559(f)(3).

inquiry, Mr. Gonzales explained that his goal in negotiating a plea in Movant's case was to obtain a plea offer to a charge that would avoid the term of mandatory life imprisonment Movant faced if convicted of first-degree murder.  (CR Doc. 110 at 9.)  Mr. Gonzales stated that he and Mr. Torrez initially discussed a plea to second-degree murder, but then realized that this would also result in a mandatory term of life imprisonment pursuant to 18 U.S.C. § 3559(f)(1) because the victim was a child.[10]  (*Id.* at 9-10.)  Per Mr. Gonzales, "that's why we looked at manslaughter."  (*Id.* at 10.)

Mr. Gonzales then explained the parties' agreement to a plea to voluntary, rather than involuntary, manslaughter:

> Mr. Torrez, when he sent me a written plea offer, the first written plea offer that we received, the section which sets out the crime to which the defendant will plead guilty listed involuntary manslaughter.  I sent that to Ms. James and then when – then we met and we discussed it and I told her I didn't think that that was going to – that that was not going to be accepted by the Court, because there's disagreement in the federal courts about whether involuntary manslaughter is a crime of violence from circuit to circuit.  And I brought this up with Mr. Torrez, and . . . we agreed to have the charge be voluntary manslaughter.  Even though this is not a typical voluntary manslaughter scenario, we both agreed that it would be a crime of violence, and being a crime of violence, it would fit within Section. . . [3559(f)(3)], crime of violence resulting in serious bodily injury, imprisoned for life or for any term of years not less than ten. . . .  Ms. James agreed to plead guilty to it because she could receive a sentence that would be less than life in prison and that fit within the parameters of the plea, which were 25 to 27 years.

(*Id.* at 10-11.)  As Judge Vázquez summarized, the parties negotiated a sentence of 25 to 27 years' imprisonment, and "then came up with a crime that fit it."  (*Id.* at 11-12.)

Judge Vázquez asked Movant if Mr. Gonzales' explanation "r[a]ng a bell," and Movant responded, "I believe so, yeah.  Yes, ma'am."  (*Id.* at 12.)  Judge Vázquez also asked Movant if she remembered agreeing to this strategy, and Movant responded, "There's a lot of things I don't

---

[10] *See, e.g., United States v. Waupoose*, 627 F. Supp. 2d 930, 935-36 (E.D. Wis. 2008) (defendant who pled guilty to second-degree murder of child was subject to mandatory life sentence pursuant to 18 U.S.C. § 3559(f)(1)).

remember, but maybe I did." (*Id.*)  When Judge Vázquez asked Movant if she "remember[ed] facing life, and trying to get down from life?," Movant responded "Uh-huh, yes.  Yes, Your Honor." (*Id.*)  Movant then explained that she wrote her letter requesting to withdraw her plea and for new counsel because she was "not happy with what I'm getting, 25 to 27.  That's a lot of years, you know. . . .  This is my first crime. . . .  It was a blackout." (*Id.* at 14.)

Judge Vázquez next addressed the contention in Movant's letter that Mr. Gonzales made "rude comments" to her.  (CR Doc. 64 at 1.)  According to Movant, Mr. Gonzales' rude comments were that Movant was "looking at a lot of years," "looking at life," and "going to do life, just things like that, you know?  There's no way out, Evelyne.  He wouldn't say, I'm working for you, Evelyne, I'm going to get you out of this, nothing like that." (CR Doc. 110 at 14-15.)  Judge Vázquez also asked Movant about her contention that Mr. Gonzales had failed to keep in adequate contact with her.  (*Id.* at 19.)  In response, Movant indicated that she had asked Mr. Gonzales to stay in contact with her daughters, and that he had not done so.  (*Id.* at 19-20.)

After Movant had explained these grievances, Judge Vázquez invited Mr. Gonzales to address them.  (*Id.* at 21.)  In response, Mr. Gonzales described lengthy plea negotiations with Mr. Torrez, in which "there was more than one figure discussed about how much time [Movant] would have to serve if she agreed to plead guilty," and which ultimately resulted in the offer of 25 to 27 years' imprisonment that Movant accepted.  (*Id.* at 21-24.)  Mr. Gonzales explained that he believed he had always been courteous to Movant, but, in his assessment, the Government's evidence was "highly incriminating," and he was unable to find any "possible suppression issues." (*Id.* at 22, 24.)  According to Mr. Gonzales, after discussing this with Movant, she told him she did not want to go to trial and directed him to negotiate a plea.  (*Id.* at 22-23.)  Mr. Gonzales stated that he spoke to Movant every time she called, if he was available, and that she

called between twice a week and every other week; that he visited her at least monthly; and, that

he would talk to her daughters "[w]hen they would call and [he] was there." (*Id.* at 25.)  Mr.

Gonzales also addressed Movant's contention, in her letter, that he twice fell asleep while

visiting her, stating that he recalled one occasion on which he became very sleepy, but did not

think he had ever fallen asleep.[11]  (*Id.* at 26.)

Judge Vázquez asked Movant if she had any response to Mr. Gonzales' statements, and

Movant replied that she did not.  (*Id.*)  Judge Vázquez then denied Movant's *pro se* motion to

withdraw her plea and to substitute counsel, finding no

> basis for withdrawal of your plea agreement.  Because you have to have a legal
> basis to withdraw your plea agreement, and I am not aware of any basis in your
> letter for withdrawal of your plea agreement.  Nor have I heard any reason to . . .
> have your lawyer removed.

(*Id.* at 26-27.)  Judge Vázquez noted that Movant had "received all of the discovery about [her]

case" and had "been provided with an explanation about the involuntary and the voluntary"

manslaughter, that Mr. Gonzales' comments about her case had been "hard . . . to hear" but

appropriate, and that the frequency of Mr. Gonzales' visits was "not unreasonable." (*Id.* at 27-

28.)  In summary, Judge Vázquez stated:

> [w]hat I don't think, from what you've told me, [is] that your problem is with
> your lawyer.  I think your problem is how hard this is emotionally for you.  If I
> honestly thought you weren't getting good representation, I would do something
> about it.
>
> THE DEFENDANT:  Yes.

(*Id.* at 30.)  At the hearing's conclusion, Mr. Gonzales indicated that he was "more than willing

to continue" to represent Movant.  (*Id.* at 31.)

---

[11] According to Mr. Gonzales, he became very sleepy during a visit with Movant in a "poorly ventilated . . . very hot
and very stuffy" detention center library, while listening to an hour-long audio recording.  (CR Doc. 110 at 26.)

The Government filed a Sentencing Memorandum on February 1, 2013, in which it asked the Court to sentence Movant to 27 years' imprisonment and to order Movant to pay $10,719 in restitution.  (CR Doc. 85 at 10.)  On April 2, 2013, Movant's counsel filed Objections to the Presentence Report (CR Doc. 87), challenging the amount of restitution the Presentence Investigation Report ("PSR") recommended, and, on April 8, 2013, filed a Sealed Sentencing Memorandum, asking the Court to sentence Movant to 25 years' imprisonment in a federal medical facility where she could receive treatment for her physical and mental health problems. (CR Doc. 89 at 12.)  The Government responded in opposition to Movant's Sealed Sentencing Memorandum on April 16, 2013, renewing its request for the Court to sentence Movant to 27 years' imprisonment.  (CR Doc. 92 at 2.)

At a sentence hearing on April 23, 2013, Movant indicated that she had reviewed the PSR, the parties' sentencing memoranda, and her objections to the PSR with her counsel.  (CR Doc. 101 at 4-6.)  Mr. Gonzales argued in support of Movant's objections to the restitution the Government sought, and Judge Vázquez sustained Movant's objections in part and overruled them in part.  (*Id.* at 7-11.)  The victim's mother, and Movant's son, two daughters, and four sisters addressed the Court.  (*Id.* at 12-24.)  Mr. Gonzales asked Judge Vázquez to sentence Movant to 25 years' imprisonment, the minimum term of imprisonment possible pursuant to her plea agreement.  (*Id.* at 25-31.)  Movant then addressed Judge Vázquez, stating that she could not remember "what happened," but that she knew what she had done was "horrendous." (*Id.* at 31-32.)  Movant also acknowledged that she "signed a plea for 25 to 27 years."  (*Id.* at 32.)  The Assistant United States Attorney also addressed the Court, arguing in support of the Government's request that the Court sentence Movant to 27 years' imprisonment.  (*Id.* at 33-35.)

After hearing argument and allocution, Judge Vázquez found that Movant

> ha[d] no criminal history points and her criminal history category is I.  The
> defendant's base offense level for manslaughter . . . is 29.  She received a three-
> level reduction for acceptance of responsibility, so her offense level is 26.  A
> criminal history category of I places her at 63 to . . . 78 months.  However, the
> statutorily required minimum sentence is ten years.  As this is greater than the
> maximum of the applicable guideline range, the guideline term of imprisonment is
> 120 months.  However, the parties have made an agreement, pursuant to Rule
> 11(c)(1)(C), and they stipulated to a sentence of 25 to 27 years.  Although this is
> higher than the guideline term of imprisonment, the defendant originally was
> charged with first-degree murder, rather than voluntary manslaughter, which is
> punishable by death or by imprisonment for life.

(*Id.* at 39.)  After considering the factors listed in 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense, the history and characteristics of the defendant," and "the purposes of sentencing," (*id.*), Judge Vázquez held

> that a sentence between the range of 25 to 27 years, as agreed to by the parties in
> the plea agreement, is sufficient but not greater than necessary to serve the goals
> of sentencing.  The Court thus accepts the plea agreement, as the Court is satisfied
> that the agreed-upon sentence departs for justifiable reasons.

(*Id.* at 48.)  Judge Vázquez then sentenced Movant to 25 years' imprisonment, and ordered Movant to pay restitution to the victim's mother in the amount of $3,535.19.  (*Id.* at 48, 50.)  The Court entered a judgment of conviction against Movant on May 20, 2013.  (CR Doc. 95.)

Movant filed the *pro se* Motion presently before the Court on May 22, 2014, asking the Court to vacate, set aside, or correct her sentence, and arguing that the Court erred in sentencing her to 25 years' imprisonment "for a crime that carries either a maximum sentence of 8 [years for involuntary manslaughter] or 15 years [for voluntary manslaughter]."  (Doc. 1 at 4.)  Movant also argued that her "defense attorney originally told [her] the charge would be involuntary manslaughter, but it was changed to voluntary," and she did not understand "why that change was made."  (*Id.*)  Movant indicated that she did not appeal these issues because she "did not understand" she could do so.  (*Id.*)  The Government responded in opposition to the Motion on August 6, 2014.  (Doc. 6.)

On May 1, 2015, Movant filed a motion asking the Court to appoint counsel for her, and the Court granted this motion on May 18, 2015, appointing attorney Diego Esquibel to represent her. (Docs. 8-10.) Mr. Esquibel filed a supplemental brief on Movant's behalf on October 15, 2015, arguing that: (1) Movant's plea was unknowing and involuntary because she quickly moved to withdraw it, and was and remains confused about the charge to which she pled guilty and its potential sentence; (2) trial counsel did not represent Movant at the hearing on her motion to withdraw her plea and to substitute counsel; (3) the Court improperly denied Movant's motion to withdraw her plea and to substitute counsel; and, (4) trial counsel provided Movant with ineffective assistance by failing to appeal that denial. (Doc. 20 at 2-11.)

The Government responded to Movant's supplemental brief on November 30, 2015, arguing that: (1) Movant's plea was knowing and voluntary; (2) trial counsel represented Movant at the hearing on her motion to withdraw her plea and to substitute counsel; (3) the Court properly denied Movant's motion to withdraw her guilty plea, and Movant's dissatisfaction with her sentence was an insufficient basis for withdrawal of the plea; and, (4) even if Movant's attorney was ineffective in failing to appeal the denial of that motion, Movant could not demonstrate that her counsel's deficient performance prejudiced her defense, because Movant waived her appellate rights in her plea agreement. (Doc. 25 at 5-14.)

Movant filed a reply in support of her supplemental brief on December 14, 2015, arguing that: (1) her motion to withdraw her plea, her statements at the hearing on the motion, and her *pro se* Motion all demonstrate that she did not understand her guilty plea; (2) her trial counsel did not represent her at the hearing on her motion to withdraw her plea because he did not advocate her arguments to the Court; (3) the Court applied an incorrect legal standard in denying Movant's motion to withdraw her plea; and, (4) Movant did not waive her right to appeal that

denial. (Doc. 26 at 3-12.) On June 16, 2016, Judge Vázquez referred this matter to the undersigned to conduct any proceedings necessary to recommend an ultimate disposition, (Doc. 28), and Movant's Motion is now before the undersigned for proposed findings and a recommended disposition.

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner who

> claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Relief is available under Section 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted). The court must presume "that the proceedings leading to the conviction were correct"; the burden is on the movant to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

## III.   ANALYSIS

### A.   **Movant's sentence was lawful, and Movant knowingly pled guilty to voluntary manslaughter.**

The Court will first address the arguments Movant raised in her *pro se* Motion, *i.e.*, (1) that the Court erred in sentencing her to 25 years' imprisonment for a crime that carries either a maximum sentence of 8 years for involuntary manslaughter, or 15 years for voluntary manslaughter; and, (2) that trial counsel "originally told [Movant] the charge would be involuntary manslaughter, but it was changed to voluntary," and Movant "does not understand

why." (Doc. 1 at 4.)  As to the first argument, "in sentencing, a miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law." *Sun Bear v. United States*, 644 F.3d 700, 706 (8th Cir. 2011).  Here, however, the 25-year term of imprisonment to which Movant was sentenced is less than the statutory maximum authorized by law.  Movant is correct that, in general, voluntary manslaughter carries a maximum term of imprisonment of 15 years, and involuntary manslaughter a maximum term of imprisonment of 8 years.[12]  18 U.S.C. § 1112(b).  However, because the victim of Movant's crime was a four-year-old child, and the crime resulted in the child's death, Movant's sentence was subject to enhancement pursuant to 18 U.S.C. § 3559.  This section provides in pertinent part that

> [a] person who is convicted of a Federal offense that is a crime of violence against the person of an individual who has not attained the age of 18 years shall, unless a greater mandatory minimum sentence of imprisonment is otherwise provided by law and regardless of any maximum term of imprisonment otherwise provided for the offense . . . if the crime of violence results in serious bodily injury (as defined in section 1365) . . . be imprisoned for life or for any term of years not less than 10.

18 U.S.C. § 3559(f)(3).[13]

In the Information to which she pled guilty, Movant was charged with voluntary manslaughter in violation of, *inter alia*, Section 3559(f)(3); and, she expressly pled guilty to that offense in her plea agreement.  (CR Doc. 59; Doc. 6-2 at 2.)  Moreover, Movant has failed to make any factual or legal argument that the crime of which Movant was convicted – the voluntary manslaughter of a four-year-old child by assault, striking, beating, and wounding – falls outside the parameters of Section 3559(f)(3), or that the Court erroneously applied this

---

[12] These federal penalties apply where, as here, the manslaughter was committed by "[a]ny Indian . . . within the Indian country."  18 U.S.C. § 1153(a).

[13] "Serious bodily injury" is "bodily injury which involves . . . a substantial risk of death[,] extreme physical pain[,] protracted and obvious disfigurement[,] or protracted loss or impairment of the function of a bodily member, organ, or mental faculty."  18 U.S.C. § 1365(h)(3).

enhancement.  (*See* CR Doc. 101 at 39; CR Doc. 110 at 10-11.)  Thus, the maximum term of imprisonment authorized by law for Movant's crime, *i.e.*, voluntary manslaughter in violation of 18 U.S.C. §§ 1112, 1153, *and* 3559(f)(3), is life imprisonment; and, Movant's 25-year term of imprisonment is below this statutory maximum.[14]  In short, the record conclusively establishes that Movant's sentence was lawful and in no way constitutes "a miscarriage of justice cognizable under § 2255."  *Sun Bear*, 644 F.3d at 706.  The Court therefore recommends that Movant's claim based on the term of imprisonment to which she was sentenced be dismissed without an evidentiary hearing.  28 U.S.C. § 2255(b); *Flood*, 713 F.3d at 1291; *Kennedy*, 225 F.3d at 1193.

Movant's second *pro se* argument is that she "does not understand why" the charge to which she pled guilty was changed from involuntary manslaughter to voluntary manslaughter. (Doc. 1 at 4.)  Whatever the current state of Movant's understanding, however, the record conclusively establishes that Movant *did* understand this change when she entered her guilty plea.  Initially, Movant's plea agreement and Rule 11 plea colloquy plainly demonstrate that, when she pled guilty, she knew she was pleading guilty to voluntary, and not involuntary, manslaughter.  (*See*, *e.g.*, Doc. 6-2 at 2, 5; Doc. 6-3 at 7-8, 10, 16-17.)  Under federal law, "voluntary manslaughter" is "the unlawful killing of a human being without malice . . . [u]pon a sudden quarrel or heat of passion."[15]  18 U.S.C. § 1112(a).  Movant's plea agreement, and the prosecutor at her plea hearing, tracked this statutory language in describing the offense to which she was pleading guilty.  (Doc. 6-2 at 2, 5; Doc. 6-3 at 7, 10, 16.)  Both the plea agreement and

---

[14] This is wholly consistent with the terms of Movant's plea agreement, Judge Molzen's statements at Movant's plea hearing, and Judge Vázquez's statements at sentencing.  (CR Doc. 101 at 39; Doc. 6-2 at 2; Doc. 6-3 at 10-11.)

[15] "Involuntary manslaughter," in contrast, is "the unlawful killing of a human being without malice  . . . [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death."  18 U.S.C. § 1112(a). The admitted facts and circumstances of Movant's killing of the four-year-old child clearly do not meet the elements of involuntary manslaughter.

Judge Molzen consistently referred to the offense to which Movant was pleading guilty as voluntary manslaughter.  (*Id.*)  And, both in the agreement and at the Rule 11 colloquy, Movant affirmed that she understood she was pleading guilty to voluntary manslaughter.  (*Id.*)  There is absolutely no indication in the record that Movant believed she was, or ought to have been, pleading guilty to involuntary manslaughter.  (*See generally* Docs. 6-2, 6-3.)

Then, as discussed in Section I, *supra*, at the hearing on Movant's motion to withdraw her plea, both trial counsel and the Court spent some time reminding Movant why the parties had at one point discussed a plea to involuntary manslaughter, but subsequently agreed upon voluntary manslaughter.  Specifically, Mr. Gonzales explained that, after extensive negotiations regarding the length of time Movant would serve in prison if she pled guilty, the parties agreed to a term of imprisonment of 25 to 27 years, and "then came up with a crime that fit it."  (CR Doc. 110 at 10-11, 21-24.)  While counsel considered a plea to second-degree murder or involuntary manslaughter, they rejected both of these possibilities, because a plea to second-degree murder would have resulted in a mandatory lifetime term of imprisonment, and the Court was unlikely to accept a plea to involuntary manslaughter as a crime of violence under Section 3559(f)(3).  (*Id.* at 9-11.)  Mr. Gonzales explained that Movant

> agreed to plead guilty to [voluntary manslaughter] because she could receive a sentence that would be less than life in prison and that fit within the parameters of the plea, which were 25 to 27 years.

(*Id.* at 11.)

Critically, when Judge Vázquez asked Movant if Mr. Gonzales' explanation "r[a]ng a bell," Movant responded, "I believe so, yeah.  Yes, ma'am."  (*Id.* at 12.)  Further, when Judge Vázquez asked Movant if she remembered agreeing to the plan he described, Movant responded, "There's a lot of things I don't remember, but maybe I did."  (*Id.*)  Judge Vázquez then asked

Movant if she "remember[ed] facing life, and trying to get down from life?," and Movant responded, "Uh-huh, yes.  Yes, Your Honor."  (*Id.*)  At no point did Movant question, challenge, or deny Mr. Gonzales' explanation in any respect.  (*See generally id.*)

"Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  The "truth and accuracy" of a defendant's statements during a plea hearing "should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements."  *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975); *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988).  In light of the foregoing circumstances, Movant's *ex post facto*, self-serving statements that she does not understand why she pled guilty to voluntary manslaughter are

> mere denials of that which [she] has previously admitted, [and] do[] not raise a substantial issue of fact within the meaning of § 2255.  Although an allegation of fact must ordinarily be accepted as true, it is not required where, as here, the allegation is contradicted by the files and records before the court.

*Runge v. United States*, 427 F.2d 122, 126 (10th Cir. 1970).

The Court is aware of Movant's prior statements that she has memory problems.  (*See, e.g.*, CR Doc. 110 at 13.)  However, Movant was evaluated and found to be competent to stand trial and has not challenged that finding.  (CR Doc. 52.)  The Court acknowledges the possibility that, between the conclusion of her plea hearing and the filing of her *pro se* motion to withdraw her plea, and again between the conclusion of the hearing on that motion and the filing of her *pro se* Motion pursuant to Section 2255, Movant may have forgotten why she pled guilty to

voluntary manslaughter.[16]   In other words, Movant's memory problems may have caused the belated procedural confusion that Judge Vázquez noted, and that generated Movant's *pro se* motions.  (*See* Doc. 110 at 8.)  However, the record conclusively establishes that Movant knew what she was doing, and why, when she pled guilty to voluntary manslaughter, and again at the conclusion of the hearing on her motion to withdraw her plea.  For all of the above reasons, the Court proposes to find that the arguments in Movant's *pro se* Motion are without merit, and recommends that they be dismissed without an evidentiary hearing.  28 U.S.C. § 2255(b); *Flood*, 713 F.3d at 1291; *Kennedy*, 225 F.3d at 1193.

### B.   Movant's guilty plea was knowing and voluntary.

Movant next argues, through counsel, that her guilty plea and concomitant waiver of appellate rights were unknowing and involuntary.  (Doc. 20 at 2-5.)  In support of this argument, Movant first relies on the following language from *United States v. Vidakovich*:

> the standard for judging the movant's reasons for delay [in seeking to withdraw a guilty plea] remains low where the motion comes only a day or so after the plea was entered.  A swift change of heart is itself strong indication that the plea was entered in haste and confusion.

911 F.2d 435, 439 (10th Cir. 1990) (quoting *United States v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1975)).  Movant contends that, by attempting to withdraw her guilty plea about three weeks after its entry, she demonstrated a "swift change of heart," and that her plea was entered in "haste and confusion."  *Id.*; (Doc. 20 at 3.)  In fact, however, Movant's change of heart was not "swift" within the meaning of *Vidakovich* and *Barker*, which expressly define the term to mean "a day or so after the plea was entered."  *Vidakovich*, 911 F.2d at 439; *Barker*, 514 F.2d at 222.  While Movant was not so dilatory in seeking to withdraw her plea that the timing "suggests

---

[16] Movant has claimed to have forgotten other, very memorable things.  Notably, at the hearing on her motion to withdraw her plea and at sentencing, Movant claimed not to remember "what happened" when she admittedly killed the victim.  (CR Doc. 101 at 31, 40-42; CR Doc. 110 at 14.)

manipulation," *Vidakovich*, 911 F.2d at 439, neither did she act so quickly that the Court could infer her plea was unknowing or involuntary merely from the speed with which she sought to withdraw it.

Movant next contends that her plea was not knowing and voluntary because she was and remains confused about the charge to which she pled guilty and the maximum term of imprisonment it carries.[17]  (Doc. 20 at 3-5.)

> A defendant's guilty plea must be knowing, voluntary, and intelligent.  To enter a plea that is knowing and voluntary, the defendant must have a full understanding of what the plea connotes and of its consequence.

*United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002) (citations and internal quotation marks omitted).  "Rule 11 of the Federal Rules of Criminal Procedure prescribes procedures designed to ensure a plea is made knowingly and voluntarily."  *United States v. Elias*, 937 F.2d 1514, 1517 (10th Cir. 1991).  Thus, to determine whether a plea agreement and its appellate waiver are knowing and voluntary, the Tenth Circuit considers "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and whether the trial court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004); *United States v. Rollings*, 751 F.3d 1183, 1187-90 (10th Cir. 2014.)

In the present matter, a number of statements in Movant's plea agreement confirm the knowing and voluntary nature of the plea.  Most particularly, Movant represented "that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other

---

[17] In making this argument, Movant relies, *inter alia*, on the prosecutor's apparent confusion regarding the statutory maximum term of imprisonment for the offense to which she pled guilty.  (Doc. 20 at 4-5.)  However, Movant cites to no legal authority holding that a prosecutor's misstatement regarding the statutory maximum term of imprisonment renders a defendant's guilty plea involuntary or unknowing where, as here, the defendant's counsel, the plea agreement, and the judge at the plea hearing all identified it correctly.  (CR Doc. 110 at 5; *cf. id.* at 11; Doc. 6-2 at 2; Doc. 6-3 at 11.)  Indeed, if anything, Movant would have benefited from the prosecutor's confusion, because he apparently believed that the statutory maximum term of imprisonment was less than it actually was.

than the promises set forth in this agreement)," and that she "understand[s] the terms of this Agreement, and . . . voluntarily agree[s] to those terms."  (*Id.* at 7-8.)  Then, Judge Molzen conducted a careful and complete Rule 11 plea colloquy, at which she informed Movant of, and confirmed that Movant understood, "what [her] plea connotes" and "its consequence[s]." *Hurlich*, 293 F.3d at 1230.  This colloquy specifically included, *inter alia*, the information Rule 11 requires, such as Movant's right to persist in a plea of not guilty, her right to a jury trial and to counsel, the nature of the charge to which she was pleading, the minimum and maximum possible penalties she faced, and the plea agreement's appellate waiver.  (Doc. 6-3 at 3-15); *see* Fed. R. Crim. P. 11(b)(1).  Judge Molzen also explained to Movant, and confirmed that she understood, the nature of the parties' agreement under Rule 11(c)(1)(C), *i.e.*, that she and the Government had agreed to a specific sentencing range of 25 to 27 years' imprisonment, that Judge Vázquez could accept or reject the agreement, and if Judge Vázquez rejected it, that Movant's only remedy would be to withdraw her plea.  (*Id.* at 11-12); *see* Fed. R. Crim. P. 11(c)(1)(C), (c)(5), (d)(2)(A).  Judge Molzen determined that there was a factual basis for the plea, as Rule 11(b)(2) requires; and, Movant testified, and Judge Molzen found, that Movant's plea was voluntary.  (*Id.* at 15-18); *see United States v. Graham*, 466 F.3d 1234, 1239 (10th Cir. 2006) (plea was knowing and voluntary where defendant, "though he now professes contrary notions, . . . participated in a Rule 11 colloquy that leaves little doubt that his plea was knowing and voluntary").

Movant suggests that her Rule 11 plea colloquy nevertheless fails to demonstrate the knowing and voluntary nature of her plea, because she responded to many of the Court's questions with yes-or-no answers.  (Doc. 20 at 4.)  The Seventh Circuit rejected a similar argument in *United States v. Messino*, 55 F.3d 1241 (7th Cir. 1995).  In *Messino*, the defendant

argued that the court did not engage in a meaningful plea colloquy because "he was only asked questions requiring yes or no answers at the plea hearing."  *Id.* at 1253.  In rejecting this simplistic argument, the court focused

> on whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights. . . .  We have not and do not intend to mandate a specific format or dialogue to be followed in a Rule 11 hearing.  If the defendant is fully apprised of his rights and the consequences of his actions, and he knowingly and voluntarily enters into the entire contents of the plea agreement, the hearing is proper.

*Id.* at 1254 (citations and internal quotation marks omitted).

Here, as in *Messino*, and notwithstanding Movant's yes-or-no answers, the total circumstances surrounding the plea conclusively show that Movant was informed of, and understood, "[her] rights and the consequences of [her] actions, and [that she] knowingly and voluntarily enter[ed] into the entire contents of the plea agreement."  *Id.*  Movant answered "yes" or "no" when Judge Molzen's questions called for yes-or-no answers, and provided specific information when the judge asked for specific information.  (*See, e.g.,* Doc. 6-3 at 8-10.)  Her answers at the plea hearing, while certainly not verbose, were appropriate and responsive, and invariably manifested her understanding of the questions Judge Molzen asked her.[18]  (*See generally id.*)

Movant also argues that her plea was involuntary because her counsel rushed her into signing it, albeit five years into the proceedings.  (Doc. 26 at 3.)  However, the transcript of the hearing on Movant's motion to withdraw her plea makes it clear that the plea agreement she ultimately signed was the result of lengthy plea negotiations; and, any "pressure and coercion [s]he felt was from the length of the potential sentence [s]he faced," and not from any improper

---

[18] Movant's responsive answers are consistent with her testimony that she was able to understand the proceedings, despite the stress she likely felt, and which Judge Molzen appears to have noticed, stating, "I want you to breathe for me because I don't want to see you faint. . . .  And if you need to sit down, you let me know."  (Doc. 6-3 at 12.)

conduct by her attorney or the Government.  *United States v. Begaye*, 2012 WL 119602, at *11

(D.N.M. Jan. 3, 2012).

> If we were to hold that urging a client who is facing an overwhelming amount of evidence of guilt against [her] to consider entering into a plea agreement is coercive, then we would make it impossible for defense attorneys to properly fulf[i]ll their professional responsibilities of advising their clients and would serve to encourage wasting court time and government resources on trials wherein the outcome is almost a foregone conclusion.

*Messino*, 55 F.3d at 1252; *see also United States v. Graves*, 106 F.3d 342, 344-45 (10th Cir.

1997) (trial court properly denied motion to withdraw plea where defendant "was not presented

with the final plea agreement until the night before trial" but "had months to consider the

implications of the plea negotiations in which he was involved").

Finally, Movant contends that the arguments in her *pro se* motion to withdraw her plea

and her *pro se* Motion pursuant to Section 2255, regarding voluntary versus involuntary

manslaughter and the statutory maximum term of imprisonment to which her plea exposed her,

demonstrate that she was and is "confused," and that her plea was therefore unknowing and

involuntary.  (Doc. 26 at 3-4.)  For the reasons discussed in Section III.A., *supra*, however,

Movant's own statements indicate that she was not confused on any pertinent point when she

entered her guilty plea, although she may have later forgotten the specific legal reasons why she

pled guilty to voluntary manslaughter, as opposed to second-degree murder or involuntary

manslaughter, just as she at some point claims to have forgotten what happened when she killed

the victim.  For all of the above reasons, the Court proposes to find that the record conclusively

establishes Movant's guilty plea was knowing, voluntary, and intelligent at the time it was made,

and recommends that her claims to the contrary be dismissed without an evidentiary hearing. 28

U.S.C. § 2255(b); *Flood*, 713 F.3d at 1291; *Kennedy*, 225 F.3d at 1193.

**C.    Trial counsel's performance at the hearing on Movant's motion to withdraw her plea did not prejudice her defense.**

Movant next argues that, although her trial counsel was present, he did not provide her with effective assistance at the hearing on her *pro se* motion to withdraw her plea and to substitute counsel.  (Doc. 20 at 6-8.)  Specifically, Movant suggests that, for her counsel to have acted effectively on her behalf, he must have advocated in favor of the arguments she made in her *pro se* motion; and, he did not.  (*Id.*; Doc. 26 at 9-10.)  As explained below, even assuming that this argument is correct, Movant cannot show that any deficiency in her counsel's performance prejudiced her defense, and thus cannot establish a Sixth Amendment claim of ineffective assistance of counsel on this basis.

 "[A] defendant's Sixth Amendment right to [the effective assistance of] counsel can be violated by the deprivation of that right at any critical stage of the proceedings against [her]," including, presumably, at a hearing on a *pro se* motion to withdraw a guilty plea and to substitute counsel.  *United States v. Lott*, 310 F.3d 1231, 1252 (10th Cir. 2002).  For a defendant to succeed on a claim of ineffective assistance of counsel, she must demonstrate both that:  (1) "counsel's representation fell below an objective standard of reasonableness"; and, (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (applying *Strickland* to plea process).  In applying the *Strickland* test, the Court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

Regarding the first *Strickland* prong, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." *Strickland*, 466 U.S. at 689.   A court's review of counsel's performance is "highly deferential," *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011), and a defendant must overcome the strong presumption that her counsel rendered adequate assistance, and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90 (on habeas review, court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," which the defendant must overcome).   "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

Regarding the second *Strickland* prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Hill*, 474 U.S. at 57 ("[J]ustifications for imposing the 'prejudice' requirement . . . are also relevant in the context of guilty pleas."). "To establish *Strickland* prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks and citation omitted).

> Where . . . the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue.  If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance.

*United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (citations omitted).

Here, the Court is not convinced that Movant's *pro se* motion to withdraw her plea and to substitute counsel was in her best interest, and recognizes the difficult position in which it placed trial counsel.  The Court is aware that "[d]ecisions such as whether to plead guilty, *whether to*

*seek to withdraw that plea*, and whether to appeal if unsuccessful rest with the defendant."
*Bonney v. Wilson*, 754 F.3d 872, 883 (10th Cir. 2014) (emphasis added).  However, if Movant
had been allowed to withdraw her plea, she was very unlikely to have received a more favorable
plea offer from the Government, (Doc. 25 at 14), and thus would have faced the prospect of
either the same or a less favorable guilty plea, or a trial at which she was highly likely to be
convicted of first-degree murder, for which she would receive a mandatory life sentence.  In
these circumstances, trial counsel had reason to believe that the granting of Movant's *pro se*
motion would not benefit, and might harm, her defense.  *See Begaye*, 2012 WL 119602, at *12
("The Court is concerned that, if it were to allow [defendant] to withdraw his guilty plea, it
would be ill-advised to do so.  His trial would likely be like watching a train wreck, with no
measurable benefit to [defendant].")  Thus, counsel's decision to refrain from supporting
Movant's *pro se* motion was at the very least understandable.

Assuming, without deciding, that this decision was nevertheless deficient, the Court
proposes to find that the deficiency did not prejudice Movant's defense.  To prevail on a claim
that counsel's failure to support a motion to withdraw a plea was prejudicial, a defendant "must
demonstrate that there was a reasonable probability that [counsel's] assistance would have led to
a favorable outcome on the motion."  *Petsche v. Tafoya*, 146 F. App'x 306, 314 (10th Cir.
2005)[19]; *see also Brooks v. Archuleta*, 621 F. App'x 921, 925-26 (10th Cir. 2015) (where
defendant alleged ineffective assistance based on counsel's erroneous advice that defendant
could not move to withdraw his plea before sentencing, "the relevant prejudice inquiry is . . .
whether [the defendant] could have successfully withdrawn his plea").  Here, trial counsel's
failure to argue in favor of Movant's motion to withdraw her plea was not prejudicial, because

---

[19] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value.
*United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

there is virtually no chance that his arguments would have led the Court to grant it.  As discussed in Section III.D., *infra*, the Court fully developed and considered the bases for Movant's motion, and correctly found no fair and just reason to grant it.  Because the record conclusively demonstrates that Movant cannot establish *Strickland*'s second prong as to her claim that her counsel was ineffective in failing to support her *pro se* motion to withdraw her plea and to substitute counsel, the Court recommends that this claim be dismissed without an evidentiary hearing.  28 U.S.C. § 2255(b); *Flood*, 713 F.3d at 1291; *Kennedy*, 225 F.3d at 1193.

> **D.** **The Court properly denied Movant's motion to withdraw her plea and to substitute counsel.**

Movant next argues that the Court erred in denying her *pro se* motion to withdraw her plea and to substitute counsel.  Movant elaborates only on why she believes it was error for the Court to deny her request to withdraw her plea.  (*See generally* Doc. 20 at 8-9; Doc. 26 at 6-9.) However, out of an abundance of caution, the Court will also address its denial of her request for new counsel.

> 1.   *The Court properly denied Movant's motion to withdraw her plea.*

The decision whether to permit a defendant to withdraw a guilty plea before sentencing is within the trial court's discretion.  *United States v. Hamilton*, 510 F.3d 1209, 1213 (10th Cir. 2007); *United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000); *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993).  "Although a motion to withdraw a guilty plea should be freely allowed," the Tenth Circuit "will not reverse a district court's denial of such a motion unless it acted unjustly or unfairly."  *United States v. Marceleno*, 819 F.3d 1267, 1272 (10th Cir. 2016); *United States v. Garcia*, 577 F.3d 1271, 1274 (10th Cir. 2009); *Hamilton*, 510 F.3d at 1213-14; *United States v. Carr*, 80 F.3d 413, 419 (10th Cir. 1996).  Under Federal Rule of Criminal Procedure 11(d)(2)(B), "a defendant may withdraw a guilty plea before the court imposes a

sentence if the defendant can show a fair and just reason for requesting the withdrawal." *Hamilton*, 510 F.3d at 1214 (internal quotation marks omitted); *Garcia*, 577 F.3d at 1273. "The defendant bears the burden of establishing a fair and just reason." *Marceleno*, 819 F.3d at 1272; *Hamilton*, 510 F.3d at 1214; *Siedlik*, 231 F.3d at 748. In the Tenth Circuit, courts consider seven factors in determining whether a defendant has met this burden:

> (1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources.

*Marceleno*, 819 F.3d at 1272; *Garcia*, 577 F.3d at 1273-74; *Hamilton*, 510 F.3d at 1214; *United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005); *Carr*, 80 F.3d at 420; *Gordon*, 4 F.3d at 1572.[20]

"If the assertion-of-innocence, knowing-and-voluntary, and ineffective-assistance-of-counsel factors all weigh against the defendant, a district court need not consider the remaining four factors." *Marceleno*, 819 F.3d at 1272. This is because the former three factors go to "the defendant's reason for withdrawal," while the latter four "speak to the potential burden on the government and the court," which the court need not address "unless a defendant presents a fair and just reason for withdrawal." *Hamilton*, 510 F.3d at 1217; *see also United States v. Lee*, 535 F. App'x 677, 680 (10th Cir. 2013) ("The primary considerations for determining whether a fair and just reason exists are whether the defendant (1) knowingly and voluntarily pled guilty, (2) had assistance of counsel relating to the decision to plead guilty, and (3) has asserted his

---

[20] The parties agree that the foregoing standards apply here, where Movant sought to withdraw her guilty plea after Judge Molzen conducted a Rule 11 plea colloquy and accepted Movant's plea, but before Judge Vázquez accepted the parties' Rule 11(c)(1)(C) plea agreement. *United States v. Hyde*, 520 U.S. 670, 674-77 (1997); *United States v. Arafat*, 789 F.3d 839, 844 (8th Cir. 2015); *United States v. Robinson*, 587 F.3d 1122, 1125-26 (D.C. Cir. 2009); *United States v. Byrum*, 567 F.3d 1255, 1261-62 (10th Cir. 2009).

innocence. . . .  If the defendant demonstrates a fair and just reason for withdrawing his guilty plea, the court may also consider systemic burdens.").

Movant argues that the Court improperly denied her motion to withdraw her plea because it failed to apply the foregoing standards, and instead applied a "higher" one by requiring Movant to show a "legal basis" for granting the motion.  (Doc. 26 at 10; *see* CR Doc. 110 at 26-27.)  The record belies Movant's argument.  Although Judge Vázquez did not explicitly list the three possible "fair and just reasons" for withdrawal of a guilty plea that the Tenth Circuit has recognized, she certainly explored the two reasons Movant raised in her letter – Movant's assistance of counsel, and whether Movant's plea was knowing and voluntary – in considerable depth.[21]  (*See generally* CR Doc. 110.)  As to Movant's assistance of counsel, Judge Vázquez carefully reviewed with Movant each of her stated grievances against Mr. Gonzales, and correctly concluded that none of them indicated Movant was receiving anything other than "good representation."  (CR Doc. 110 at 30.)  Likewise, Judge Vázquez devoted considerable time and care to ensuring that Movant's guilty plea was knowing, voluntary, and intelligent when she entered it.  (*Id.* at 7-14, 21-24, 26-30.)  In short, the record conclusively demonstrates that Judge Vázquez applied the correct standards, and that the "legal basis" to which she referred was

---

[21] Movant did not raise the third possible reason, *i.e.*, "an objectively reasonable argument that [she] is innocent."  *Hamilton*, 510 F.3d at 1214; *see also Marceleno*, 819 F.3d at 1273 (defendant must make a "credible assertion" of innocence).  Although Movant, through counsel, argues that she asserted her innocence at the hearing on her motion to withdraw her plea, (Doc. 26 at 2), the Court has thoroughly reviewed the hearing transcript and concludes that she did not.  (*See generally* CR Doc. 110.)  Rather, at most, she asserted that she cannot remember what happened, which is decidedly not "an objectively reasonable argument" or "credible assertion" of innocence.  *Marceleno*, 819 F.3d at 1273; *Hamilton*, 510 F.3d at 1214.  Then, Judge Vázquez was not required to address the remaining four factors regarding systemic burdens, because Movant failed to present a fair and just reason for the withdrawal of her plea.  *Marceleno*, 819 F.3d at 1272.  However, had Judge Vázquez addressed these factors, the undersigned notes that a plea withdrawal inevitably results in "[s]ome degree of prejudice" to the Government, "some degree of inconvenience to the court," and "some waste of judicial resources."  *Carr*, 80 F.3d at 420-21.

interchangeable with the "fair and just reasons" for withdrawal of a plea that the Tenth Circuit has recognized.[22]

In fact, the thorough record Judge Vázquez developed made it clear that Movant's essential complaint about her guilty plea was with the length of her sentence, (CR Doc. 110 at 14); and, "dissatisfaction with the length of a sentence is an insufficient reason to withdraw a plea." *Gordon*, 4 F.3d at 1573; *see also Siedlik*, 231 F.3d at 749-50 (a "change of heart in light of developments of the sentence" is not a "substantive reason that is cognizable at law" to withdraw a plea); *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) ("The fact that a defendant has a change of heart prompted by his reevaluation of . . . the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea."); *Elias*, 937 F.2d at 1520 ("A defendant's dissatisfaction with the length of his sentence generally is insufficient reason to withdraw a plea."). Because the record conclusively demonstrates that Judge Vázquez acted well within her discretion in denying Movant's motion to withdraw her guilty plea, the undersigned recommends that Movant's claims based on this denial be dismissed without an evidentiary hearing. 28 U.S.C. § 2255(b); *Flood*, 713 F.3d at 1291; *Kennedy*, 225 F.3d at 1193.

2. *The Court properly denied Movant's motion to substitute counsel.*

The decision whether to grant a defendant's motion to substitute counsel is also within the trial court's discretion. *Lott*, 310 F.3d at 1249; *United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir. 1992). While a criminal defendant "certainly has a constitutionally protected right to counsel, there is no absolute right to counsel of one's choice." *Johnson*, 961 F.2d at 1490; *see also United States v. Turner*, 217 F. App'x 799, 802 (10th Cir. 2007) ("An indigent

---

[22] Movant also contends that the record of the hearing on her motion to withdraw her plea is incomplete because trial counsel did not support her arguments at the hearing. (Doc. 26 at 10-11.) The Court disagrees. The hearing transcript clearly shows that, although trial counsel refrained from arguing in support of it, Judge Vázquez carefully and thoroughly developed the record on Movant's motion. (*See generally* CR Doc. 110.)

defendant does not possess a Sixth Amendment right to *his choice* of appointed counsel.") (emphasis in original).  Rather, "[t]o warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust" result.  *Lott*, 310 F.3d at 1249; *Johnson*, 961 F.2d at 1490.  "Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney; rather, there must be a total breakdown in communications."  *Lott*, 310 F.3d at 1249 (internal citation omitted); *see Turner*, 217 F. App'x at 802 (denying counsel's motion to withdraw where counsel alleged "a complete divergence of opinion" with client "as to the proper handling of th[e] appeal").  "[T]o prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible."  *Lott*, 310 F.3d at 1249.

Here, the transcript of the hearing on Movant's motion to withdraw her plea and to substitute counsel conclusively demonstrates that there was no cause to warrant a substitution of counsel.  As discussed above, at the hearing, Judge Vázquez carefully reviewed with Movant each of her stated grievances against Mr. Gonzales, and concluded that he was providing Movant with "good representation"; and, the record fully supports this conclusion.  (CR Doc. 110 at 7-30.)  Certainly, none of Movant's grievances constituted "a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust result."  *Lott*, 310 F.3d at 1249.  Indeed, by the end of the hearing, Movant appeared to agree with Judge Vázquez on this point, participating in the following exchange:

> What I don't think, from what you've told me, [is] that your problem is with your lawyer.  I think your problem is how hard this is emotionally for you.  If I honestly thought you weren't getting good representation, I would do something about it.

THE DEFENDANT:  Yes.

THE COURT:  All right?  I think what you need to focus on is working with your lawyer to get all the information you need to bring in for your sentencing hearing, thinking about what you need to say, who you want to come and to say what to help me understand what happened.  Okay?

THE DEFENDANT:  Okay.  Thank you, Your Honor.

THE COURT:  You're welcome.  And I'm glad that you came.

THE DEFENDANT:  I'm glad I came, too.

(CR Doc. 110 at 30-31.)  There is simply no indication in the record of a "severe and pervasive conflict" with Mr. Gonzales that would have justified a substitution of counsel.  *Lott*, 310 F.3d at 1249.   Because the record conclusively demonstrates that Judge Vázquez acted within her discretion in denying Movant's motion to substitute counsel, the undersigned recommends that Movant's claims based on that denial be dismissed without an evidentiary hearing.  28 U.S.C. § 2255(b); *Flood*, 713 F.3d at 1291; *Kennedy*, 225 F.3d at 1193.

> **E.**     **The Court will expand the record regarding trial counsel's failure to appeal the denial of Movant's motion to withdraw her plea and to substitute counsel.**

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  Thus, a defendant who shows that his lawyer failed to file a notice of appeal despite the defendant's specific instructions to do so satisfies the first prong of the *Strickland* test.  *Id.*  Moreover, "if counsel does not file a requested appeal, a defendant is entitled to a new appeal without a showing that his appeal likely would have had merit."  *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005) (citations, internal quotation marks, and brackets omitted).  In other words, prejudice from counsel's deficient performance is presumed, thus satisfying

*Strickland*'s second prong.  *Id.*; *see also United States v. Parker*, 720 F.3d 781, 785-86 (10th Cir. 2013) ("A defendant receives ineffective assistance of counsel if his attorney disregards a specific instruction to take an appeal from a conviction or sentence.  Under such circumstances a defendant is entitled to a belated appeal without showing the appeal to have merit.") (citations omitted).

> When a defendant has not specifically instructed counsel whether to file an appeal,
>
> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all the information counsel knew or should have known.

*Flores-Ortega*, 528 U.S. at 480.  The *Flores-Ortega* Court "expressly rejected a bright-line rule that counsel must always consult with the defendant regarding an appeal."  *United States v. Clark*, 596 F. App'x 696, 703 (10th Cir. 2014) (citing *Flores-Ortega*, 528 U.S. at 480).   In deciding whether a duty to consult exists,

> a highly relevant factor is whether the conviction followed a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Other factors that tend to indicate no duty include whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Id.* at 704 (quoting *Flores-Ortega*, 528 U.S. at 480).  "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal."  *Flores-Ortega*, 528 U.S. at 480.

> In addition, a breach of the duty to consult with a defendant about an appeal
>
> must actually cause the forfeiture of the defendant's appeal. . . .  [T]o show prejudice in these circumstances, a defendant must demonstrate that there is a

36

> reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. . . .   To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal.  But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.

*Id.* at 484, 486.

In the present matter, Movant does not claim that she specifically instructed her trial counsel to appeal Judge Vázquez's denial of her motion to withdraw her plea.  (*See* Doc. 20 at 10 ("In this case there is no evidence that [Movant's c]ounsel ignored her request to appeal the denial of her [m]otion to [w]ithdraw the [p]lea [a]greement.").)  However, Movant clearly does claim that her trial counsel had a duty to consult with her about filing such an appeal, because "[t]here is evidence that [Movant] never gave up her desire to have her plea withdrawn."  (*Id.*)  What is considerably less clear is whether Movant actually alleges that her trial counsel did not consult with her about an appeal.  Movant never directly states that he did not do so; rather, she merely contends, "[i]t is believed[23] that the subject of an appeal was never discussed with [Movant]" after Judge Vázquez denied her motion to withdraw her plea.  (*Id.*)  In support of this "belief," Movant relies on the statements in her *pro se* Motion that she "[d]id not understand [she] could appeal."  (*Id.* (citing Doc. 1 at 5, 11).)

In light of the fact that Movant's current counsel met with Movant in person at least twice before filing his two briefs in support of the Motion, (Doc. 16 at 2; Doc. 19), it is notable that he failed to include in either brief a direct statement that trial counsel did not consult with Movant about an appeal.  (Docs. 20, 26.)  This conspicuous omission causes the Court to question whether Movant in fact claims and would testify that her trial counsel did not consult with her about an appeal. The Court also has some doubt about counsel's statement that "it is evident that

---

[23] Movant never identifies the person or persons holding this belief.  (*See generally* Doc. 20.)

[Movant] feels passionately about this issue *and would have appealed*."   (Doc. 20 at 11 (emphasis added).)  As explained below, however "passionately" Movant feels, the Court finds the present record inadequate to demonstrate a reasonable probability that Movant "would have appealed" in a timely manner if her counsel had consulted with her about it.  *Flores-Ortega*, 528 U.S. at 484.

Movant's conviction followed a knowing, voluntary, and intelligent guilty plea, rather than a trial.  Judge Vázquez subsequently imposed the shortest possible sentence to which the parties agreed pursuant to Rule 11(c)(1)(C).  (CR Doc. 101 at 48; Doc. 6-2 at 3.)  Movant's plea agreement contained a waiver of appellate rights, which stated that

> the Defendant knowingly waives the right to appeal her conviction and any sentence imposed in this case, except to the extent, if any, that the Court may impose a sentence that differs from that agreed to by the parties under Federal Rule of Criminal Procedure 11(c)(1)(C).

(*Id.* at 6-7.)  An appeal of the Court's denial of Movant's motion to withdraw her plea falls within the scope of this waiver.  *United States v. Mascheroni*, 612 F. App'x 504, 506 (10th Cir. 2015) ("Case law makes clear that an appeal of a denial of a motion to withdraw a plea is an attempt to contest a conviction on appeal, and thus falls within the plain language of an appeal waiver provision.") (quoting *United States v. Elliott*, 264 F.3d 1171, 1174 (10th Cir. 2001)).  On the present record, the Court sees no basis on which the Tenth Circuit would refuse to enforce the waiver.  *See Hahn*, 359 F.3d at 1325 (To determine whether to enforce appellate waiver in plea agreement, Tenth Circuit considers "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his

appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.").[24]

In light of the foregoing circumstances, if trial counsel had consulted with Movant about appealing the Court's denial of her motion to withdraw her plea, he would most likely have advised against the appeal. Initially, he would likely have advised Movant that such an appeal would be unsuccessful because she had waived her right to bring it. In addition, as discussed in Sections III.C. and III.D.1., *supra*, he would likely have advised against the appeal because there were no nonfrivolous grounds for it, and because it would not have benefitted Movant even if successful. On the present record, the Court does not find it "evident" that Movant would have instructed her trial counsel to file an appeal even if he had advised her against doing so, as it seems overwhelmingly likely he would have done.

"[W]here the issues raised by [a motion pursuant to 28 U.S.C. § 2255 are] conclusively determined either by the motion itself or by the files and records in the trial court," no evidentiary hearing is necessary. *Machibroda v. United States*, 368 U.S. 487, 494 (1962) (internal quotation marks omitted). In contrast, where

> [t]he factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the Government's response, relate[] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light[,]

an evidentiary hearing is necessary. *Id.* at 494-95. However, this does not

> imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be.

---

[24] "[C]ounsel's alleged failure to file an appeal does not undermine the validity of the plea or" its waiver of appellate rights. *United States v. Viera*, 674 F.3d 1214, 1218-19 (10th Cir. 2012).

*United States v. Harrison*, 375 F. App'x 830, 833 (10th Cir. 2010) (quoting *Machibroda*, 368 U.S. at 495).  Further, the Court "may employ a variety of measures in an effort to avoid the need for an evidentiary hearing," including the expansion of the record pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  *Blackledge*, 431 U.S. at 81-82.

Rule 7 provides that, in Section 2255 actions, "the judge may direct the parties to expand the record by submitting additional materials relating to the motion."  R. 7(a), R. Governing § 2255 Proceedings.  These materials may include "answers under oath to written interrogatories propounded by the judge."  R. 7(b), R. Governing § 2255 Proceedings.  Also, "[t]he judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness."  R. 7(c), R. Governing § 2255 Proceedings.  Here, Movant's allegations regarding whether trial counsel failed to consult with her about an appeal and whether she would have directed him to file an appeal against his advice, are vague and indirect, but also concern "occurrences outside the courtroom and upon which the record" casts no direct light.  *Machibroda*, 368 U.S. at 494-95.  The Court will therefore allow Movant an additional opportunity to make specific and concrete allegations in support of her claims, by expanding the record in accordance with Rule 7.  Specifically, the Court will reserve recommending a disposition of Movant's Sixth Amendment claim regarding her trial counsel's failure to appeal the denial of her motion to withdraw her guilty plea, pending its review of her answers to interrogatories it will propound by separate order, and of the Government's response, if any, to these answers.

**IV.    CONCLUSION**

For all of the foregoing reasons, as to all but one of her claims, the undersigned proposes to find that the Motion, exhibits, and record conclusively establish that Movant is not entitled to the relief she seeks.  Consequently, the undersigned recommends that the Court DISMISS with prejudice all of Movant's claims, except the claim that her trial counsel provided her with ineffective assistance by failing to appeal the Court's denial of her *pro se* motion to withdraw her guilty plea.  The undersigned reserves recommending a disposition as to the latter claim pending a review of Movant's answers to interrogatories the undersigned will propound by separate order filed contemporaneously herewith, and of the Government's response, if any, to these answers.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**